THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:08-CV-98-FL

| | |
|---|---|
| CONNIE H. ROBINSON, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| v. | )    **MEMORANDUM AND** |
| | )    **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Connie H. Robinson ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for DIB and SSI payments on 21 May 2004,[1] alleging disability beginning 20 June 2003. (R. 48-50, 494-97). Both claims were denied initially and upon reconsideration. (R. 31-37, 40-41, 498-507). A hearing before the

---

[1] Claimant filed previously for SSI on 6 October 2003. (R. 476-480). Her application was denied initially and upon reconsideration. (R. 481-85, 488-92).

Administrative Law Judge ("ALJ") was held on 11 August 2006, at which Claimant was represented by counsel. (R. 520-545). On 21 November 2006, the ALJ issued a decision denying Claimant's claims. (R. 13-23). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 12), and submitted additional evidence as part of her request (R. 510-19). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on 4 February 2008. (R. 6-9). Claimant then filed a complaint in this Court seeking judicial review of the now final administrative decision.

## STANDARD OF REVIEW

In its consideration of the final agency determination, this Court must remain mindful of the standard by which it reviews the administrative decision. *See e.g., Evans* v. *Eaton Corp. Long Term Disability Plan,* 514 F.3d 315, 320-21 (4th Cir. 2008) (citations omitted) (explaining standards of review are an expression of judicial restraint safeguarding the "superior vantage points of those entrusted with primary decisional responsibility."). The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen,* 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood,* 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and

2

somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c); 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of

3

functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to incorporate pertinent findings and conclusions based on the technique into his written decision. *Id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to properly evaluate Claimant's mental impairment and to apply the special technique for mental impairments; (2) improper assessment of Claimant's credibility; (3) improper assessment of Claimant's RFC; and (4) relying exclusively on the Medical-Vocational Guidelines listed in 20 C.F.R. § 404, Subpart P, Appendix 2 ("the Grids") in determining Claimant was capable of other employment existing in the national economy. Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 2, 10. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 18). Next, the ALJ determined Claimant had the following combination of severe impairments: (1) lumbar disc disease; (2) facet disease; and (3) depression. *Id.* The ALJ also found Claimant had nonsevere impairments of symptomatic fibroids, anemia and migraine headaches. (R. 18-19). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

4

Appendix 1. (R. 19). In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found as follows:

> The [C]laimant has...moderate restrictions of activities in daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation, each of extended duration. [T]he [C]laimant does not meet the "C criteria" of Medical Listing 12.04.

(R. 21).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] with no frequent changes in work procedures. (R. 19). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 20). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a housekeeper and laminator. (R. 22). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant, a high school graduate, was 44 years old and unemployed. (R. 525). Claimant was last employed with the Carolina Inn as a

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

housekeeper. (R. 523-24, 526). Claimant's past work experience also includes working as a home health aide. (R. 526).

Claimant testified that she is unable to work due to shoulder and lower back pain, high blood pressure and depression. (R. 527, 529). As a result of her back pain, Claimant experiences leg pain and swelling of both feet. (R. 527). Claimant testified further to experiencing panic attacks and attributed such attacks to her back pain. (R. 541). Claimant suffers from dizziness, weakness and headaches on a weekly basis due to high blood pressure. (R. 531-33). As a result of depression, Claimant cries often. (R. 542).

To alleviate her back pain, Claimant attends a pain clinic (R. 535) and uses a Transcutaneous Electrical Nerve Stimulation ("TENS") unit (R. 537). Claimant takes numerous prescribed pain medications and suffers fatigue as a result. (R. 524, 536, 542) In the past, Claimant has received epidural steriod injections (R. 536) and attended physical therapy. (R. 537). Claimant takes non-prescription Tylenol for her headaches. (R. 532). Claimant received mental health treatment from August 2005 through January 2006, at which point the county health clinic was unable to accommodate Claimant, due to its discontinuation of its practice. (R. 534). Claimant is prescribed Prozac by her primary care physician. (R. 533-35).

As a result of her pain, Claimant stated her ability to walk, stand, bend and lift are limited. (R. 531, 539). For example, Claimant testified that she is unable to lift items exceeding five pounds or to sit down at times while taking a shower and that she must rely on her husband's assistance when putting on her shoes. (R. 531, 539). Claimant lies down for up to two hours three to four times a day. (R. 533). Claimant relies on her family for cooking and performing most household chores. (R. 529). Claimant testified to putting dishes in the dishwasher and to

6

sweeping "a little bit." (R. 529). Claimant's husband assists her in getting out of the shower and with getting dressed. (R. 539). Claimant attends church on an infrequent basis and drives occasionally. (R. 523, 538-39).

## DISCUSSION

### I. The additional evidence submitted to the Appeals Council is not material.

The Appeals Council incorporated the following additional evidence into the record: (1) lumbar spine MRI dated 18 April 2007 (R. 512-13); (2) lumbar spine MRI dated 14 January 2005 (R. 514); and (3) a 12 July 2007 work release form from Malcolm Shupeck, M.D., indicating Claimant is unable to work until further notice (R. 515). Although the Appeals Council discounted the additional evidence (R. 7), this Court must review this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings"). However, the claimant must show that the evidence is new, i.e., not duplicative or cumulative of that which is already in the record, and explain how it relates to the claimant's medical condition as it was at the time of the hearing. 20 C.F.R. §§ 404.970(b), 416.1470(b); *see also Wilkins*, 953 F.2d at 96 (citations omitted). In this case, the relevant time period extends from 20 June 2003 (Claimant's alleged disability onset date) to 21 November 2006 (the date of the ALJ's decision). (R. 23, 48).

As an initial matter, the Court notes that Claimant has not explained the relevance of any of the above evidence and in fact, fails to cite this evidence in her brief. Second, the Court finds

7

the additional evidence immaterial as it would not have changed the outcome of the ALJ's decision. As for the 2007 MRI, the Court finds this record immaterial in that it is cumulative. In particular, the MRI documents evidence of a disc bulge at the L5-S1 and L4-L5 levels - the same findings documented in medicals records submitted to and acknowledged by the ALJ. (R. 20 ¶3, 175, 512, 472). The MRI documents further evidence of uterine fibroids - an impairment acknowledged and discussed by the ALJ. (R. 19, 512). The 14 January 2005 MRI is duplicative as its findings are summarized in a February 2006 progress note cited by the ALJ. (R. 20, 472). Finally, the work form completed by Dr. Shupeck is not accompanied by any medical evidence supporting his opinion that Claimant is incapable of working. As such, this Court is unable to discern whether Dr. Shupeck relied on evidence in existence during the relevant time period reflecting Claimant's condition at that time. Accordingly, the additional evidence cannot change the outcome in this case, and thus is not material. *Id.*

## II. The ALJ did not fail to apply the special technique for mental impairments in accordance with 20 C.F.R. §§ 404.1520a, 416.920a.

Claimant contends the ALJ improperly evaluated Claimant's mental impairment and failed to follow the special technique set forth in 20 C.F.R. §§ 404.1520a, 416.920a in assessing the extent of Claimant's mental limitations. Pl.'s Mem. at 7.

At step two, the ALJ found that "[t]he **claimant has the following severe impairments: lumbar disc disease, facet disease, and depression**...While the record documents complaints of migraine headaches, uterine fibroids, anemia, and depression, no functional limitations are established in conjunction with these conditions." (R. 18) (emphasis in original). Accordingly, Claimant faults the ALJ for attributing no functional limitations to Claimant's depression despite classifying her depression as a severe impairment.

8

The Court finds this contradiction warrants little discussion as the inclusion of Claimant's depression as a non-severe impairment within the step-two discussion was clearly inadvertent. The ALJ's decision reflects due consideration of Claimant's mental impairment and its impact on her ability to work. In particular, the ALJ summarized the September 2004 medical findings by Scott Schell, M.D., a state agency examining consultant, including Claimant's ability to perform simple, repetitive tasks. (R. 21, 167). However, the ALJ found that this finding was not meant as a "genuine limitation" given the lack of documentation supporting a cognitive or concentration loss. (R. 21, 166, 353). Indeed, Dr. Schell noted that Claimant sustained concentration during the examination and, during an August 2004 visit to a mental health clinic, a counselor found Claimant's cognitive functions were within normal limits and her attention and concentration were "focused."[3] (R. 21, 166, 353). The ALJ acknowledged that Dr. Schell and the mental health counselor assigned Claimant a Global Assessment of Functioning ("GAF")[4]

---

[3] Claimant contends the ALJ failed to document findings by Dr. Shell and the mental health clinic which are generally attributed to depression, including Claimant's diminished interest in activities, irritability, insomnia and her impaired memory and concentration. Pl.'s Mem. at 8. However, as stated above, the ALJ relied on both records in finding Claimant's depression was a severe impairment. (R. 21). Moreover, the ALJ is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays,* 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen,* 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.,* 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman, 829 F.2d at 517.* Here, the ALJ's summary of the medical notes by Dr. Schell and the mental health counselor, as discussed above, "enable[s]...[this Court] to conclude that [the ALJ] considered her medical condition as a whole." *See Dyer,* 395 F.3d at 1211.

[4] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 1994).

9

score of 55 and 53, respectively (R. 21), both of which indicate "[m]oderate symptoms...[or] moderate difficulty in social, occupational, or school functioning." DSM-IV at 32 (bold typeface omitted). The ALJ noted further that Claimant had a GAF score of 64 within the past year (R. 21), which reflects "[s]ome mild symptoms...[or] some difficulty in social, occupational, or school functioning...but generally functioning pretty well...." DSM-IV at 32 (bold typeface omitted). Finally, the ALJ cited Claimant's limited specialist treatment for her depression and noted that "[p]hysicians have not generally seen signs of depression and instead it seems [Claimant] has mainly a somatic tendency." (R. 21). Upon considering this evidence, the ALJ found that Claimant's depression limited her to work "not requiring frequent changes in work procedures." (R. 21).

Next, Claimant faults the ALJ for failing to document application of the special technique in his decision. In cases where a claimant presents evidence that she suffers from mental impairments, regulations prescribe a "special technique" that the ALJ must follow. 20 C.F.R. §§ 404.1520a(b)-(c); 416.920a(b)-(c). If the ALJ determines that a claimant has medically determinable mental impairments, he must "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment." *Id.* at §§ 404.1520a(b)(1), 416.920a(b)(1). Next, the ALJ must rate the degree of a claimant's functional limitation in four broad areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked and extreme. *Id.* §§ 404.1520a(c)(4); 416.920a(c)(4). A four-point scale is used to rate the fourth functional

10

area: none, one or two, three, and four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.*

The ALJ's decision indicates he considered the functional areas described in the special technique. Indeed, subsequent to the discussion of evidence substantiating the presence of Claimant's depression, the ALJ performed the required ratings analysis of functional limitations. (R. 21). In particular, the ALJ determined Claimant's depression resulted in "moderate restrictions of activities in daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation...." (R. 21 ¶4). For the foregoing reasons, Claimant's argument on this issue is without merit.

**III.    The ALJ properly evaluated the credibility of Claimant's statements.**

Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony. Pl.'s Mem. at 4-7. This Court disagrees.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); Soc. Sec. Rul. ("S.S.R.") 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must conside r conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms,

11

including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *Newton v. Astrue*, 559 F. Supp. 2d 662, 673 (E.D.N.C. 2008). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1)    effect of symptoms on claimant's daily activities
(2)    location, duration, frequency and intensity of the symptom(s)
(3)    factors that precipitate or aggravate claimant's symptoms
(4)    type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5)    non-medical treatment received for relief of the symptom(s)
(6)    any non-treatment measures used to relieve the symptom(s)
(7)    other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination and analysis of Claimant's complaints of pain pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ summarized Claimant's medical records as to each impairment and noted the

12

modest findings on diagnostic testing. (R. 19-21). With respect to Claimant's back impairment, the ALJ acknowledged Claimant's history of low back pain since June 2003[5] and Claimant's numerous visits to the emergency room for complaints of back pain. (R. 20, 228, 269, 276, 290). The ALJ provided a detailed summary of Claimant's August 2004 emergency room findings, including tenderness in the lower back area, decreased range of motion, muscle spasms, negative straight leg test on the right and "pain on the left at 30 degrees." (R. 21, 277). The ALJ noted Claimant had undergone MRI studies of her back, which revealed mild findings of degenerative disc disease. (R. 20-21, 140, 145, 175, 177, 285, 424, 472). The ALJ discussed also the September 2004 examination by Mark Pomerans, M.D., a state agency physician. (R. 20, 163). While noting that Claimant experienced pain when tiptoe and heel walking and that her straight leg test was positive in the sitting and lying down positions, Dr. Pomerans described Claimant's remaining musculoskeletal examination as "grossly normal." *Id.* The ALJ noted that Dr. Pomerans assessed Claimant "as having probable degenerative disc disease with chronic strain, with probable neurological compromise due to bulging disc." *Id.*

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's

---

[5] Claimant faults the ALJ for ignoring testimony wherein she attributed her back pain to an automobile accident in 2002. Pl.'s Mem. at 17; (R. 528). However, citing a June 2003 emergency department record, the ALJ noted that no specific incident was attributed to the onset of Claimant's back pain. (R. 20); *see* (R. 293) (noting Claimant "doesn't rember (sic) any tramua (sic)"); *see also* (R. 143) (October 2003 medical visit explaining Claimant's four-month history of back pain and her denial of "any acute event...[or] any trauma to the area"). Rather, as indicated in a November 2004 medical record, the ALJ noted that Claimant "reported that she was walking down a hall and had a sudden sharp pain in her low back that went up her spine and slightly radiated to her right lower extremity." (R. 20, 169).

13

statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's reliance upon her husband when bathing and dressing and Claimant's testimony as to daily activities, which includes reading, watching television, folding laundry; (2) Claimant's middle and lower back pain, shoulder, hip and leg pain, the fact her pain is worse in the morning and in the evening and the rating of her hip and back pain as a nine on a scale of 1-10; (3) Claimant's use of percocet, baclofen, nabumetone, endocet, duragesic patches and epidural steroid injections for her back pain, her recent procurement of narcotic medication and the lack of significant side effects; (4) Claimant's 2003 physical therapy visits (R. 147-160) and her conservative treatment without any significant pain relief. (R. 19-21).

The ALJ noted that Claimant testified about shoulder pain that "has not been medically explained" and found that Claimant "displayed a kind of pain behavior that was not entirely credible." (R. 21). The ALJ noted further that Claimant claimed extensive pain on palpation during a February 2006 physical examination. (R. 21, 471). However, based on Claimant's MRI findings, the ALJ concluded that "[o]verall it seems unlikely that [Claimant] has severe disabling pain that would prevent light work activity." This statement is supported by Dr. Pomerans' finding that Claimant is "can perform all activities of normal living" and Claimant's July 2005 emergency room visit, during which a physician informed Claimant that she could return to work "with no restrictions." (R. 231).

14

The ALJ properly evaluated Claimant's subjective accounts of her symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, his decision that Claimant can perform only light exertional activities, despite three state agency physical RFC assessments indicating Claimant was capable of medium exertion (R. 376-77, 396-411), reflects the weight and credibility he afforded Claimant's subjective statements about her symptoms. *See* (R. 22) (explaining "the undersigned is not persuaded by the State Agency physicians' opinions because [they] did not have the benefit of actually examining [C]laimant or considering the record in its entirety"). The evidence provides sufficient grounds for the ALJ's conclusion that Claimant's subjective account of her limitations was inconsistent with available objective evidence. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## IV.    The ALJ properly assessed Claimant's RFC.

Claimant contends the ALJ failed to accurately describe Claimant's RFC. Pl.'s Mem. at 8-10. In particular, Claimant contends the ALJ failed to evaluate the cumulative effect of her impairments on her ability to work, failed to include a "narrative discussion...describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence...,"

and failed to express limitations resulting from her mental impairment in terms of work-related functions. Pl.'s Mem. at 2-4, 8-10. This Court disagrees.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the case record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

Claimant's argument regarding the ALJ's alleged failure to consider the cumulative effects of her impairments merits little discussion, as "[s]ufficient consideration of the combined effects of a [claimant's] impairments is shown when *each is separately discussed in the ALJ's decision*, including discussion of a [claimant's] complaints of pain and level of daily activities." *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (emphasis added) (citations omitted), *aff'd* 179 Fed. Appx. 167 (4th Cir. 2006) (unpublished per curiam). Here, the ALJ acknowledged Claimant's complaints of anemia, headaches and dizziness and her treatment for

16

symptomatic fibroids in the form of monthly Depo Provera shots (R. 19, 221, 322, 461, 463, 468). The ALJ noted further that a CT scan of Claimant's head was "unremarkable." (R. 19, 322). However, as stated by the ALJ, the record contains no restrictions or limitations related to any of the above impairments. Nonetheless, Claimant avers that "[e]ven if [the] symptoms [associated with her headaches, uterine fibroids and anemia] were not individually of disabling severity, they certainly affected [her] ability to function, when combined with the chronic pain and movement restrictions...experienced with her severe impairments...." Pl.'s Mem. at 4. Claimant cites no evidence as to her non-severe impairments which indicate limitations beyond those discussed by the ALJ nor any authority for the implied proposition that the mere existence of non-severe impairments necessarily inhibits her ability to function. Finally, while the ALJ described the evidence as to each impairment separately, his decision indicates that he considered all of Claimant's mental and physical limitations in totality before determining Claimant maintained the RFC to perform light work.

Despite Claimant's contention to the contrary, the ALJ's opinion is far from "simply conclusory." Pl.'s Mem. at 9. As discussed above, the ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts as to each impairment. In addition, the RFC assessment takes account of Claimant's testimony concerning pain to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines*, 453 F.3d at 565 (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence). Also, as explained above, the ALJ's review of Claimant's medical impairments also includes substantive findings by Drs. Pomerans and Schell, state agency examining physicians, and given the lack of evidence contradicting those findings,

17

the ALJ properly relied on their medical opinions in determining Claimant's work-related capacity. Moreover, while three state agency consultants found Claimant had the RFC to perform medium work (R. 376-77, 396-411), the ALJ found Claimant capable of light work only given Claimant's level of pain. (R. 21).

Finally, this Court finds that the ALJ expressed properly limitations resulting from Claimant's mental impairment "in terms of work-related functions" in accordance with S.S.R. 96-8p. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." S.S.R. 96-8p, 1996 WL 374184, at *6 (July 2, 1996). In other words, a claimant must be capable of performing unskilled work. *See* S.S.R. 96-9p, 1996 WL 374185, at *9 (July 2, 1996) (listing the above mental activities as "generally required by...unskilled work"). Here, the ALJ found that "psychiatrically [Claimant] could function at work not requiring frequent changes in work procedures." (R. 21). Claimant avers this finding is not in conformity with S.S.R. 96-8p and faults the ALJ for failing to define this limitation. Pl.'s Mem. at 10. However, in finding Claimant is capable of performing jobs that "do not require frequent changes in work procedures as they are unskilled," (R. 22 ¶9), the ALJ evaluated properly Claimant's mental activities in terms of work-related functions. *See* S.S.R. 96-8p, 1996 WL 374184, at *6 (explaining unskilled work includes the ability to "deal with changes in a routine work setting").

The ALJ's opinion demonstrates a thorough review of Claimant's medical history and a detailed account of Claimant's claims concerning her impairments. The ALJ's RFC

18

determination finds accord with the opinions of state agency examining physicians (R. 20-21) and no objective medical evidence from Claimant's treating physicians contradicts the ALJ's recommendation. For the foregoing reasons, the Court finds this assignment of error is without merit.

## V.    The ALJ did not err in relying on the Grids.

Finally, Claimant argues the ALJ erred by failing to call a VE to testify as to the impact of Claimant's nonexertional limitation on the light occupational base. Pl.'s Mem. at 10.

Once a claimant successfully demonstrates that he cannot perform his past relevant work, the burden shifts to the Commissioner to show that the claimant, based on her age, education, work experience and RFC, can perform other substantial gainful work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also Pass*, 65 F.3d at 1203. The ALJ may carry this burden through the use of the Grids if a claimant has no nonexertional impairments that prevent her from performing the full range of work at a given exertional level. *Coffman*, 829 F.2d at 518; *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). However, an ALJ may not rely exclusively upon the Grids in cases involving two types of claimants: those who suffer a disability present in the absence of physical exertion and those who suffer in exertion a disability that restricts their ability to perform a full range of work at a given exertional level. *Hammond*, 765 F.2d at 425-26. In both such cases, an ALJ must go beyond the Grids and "produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant." *Id.* at 426; *see Gory*, 712 F. 2d at 931 ("If only nonexertional limitations are claimed, the [Grids] do not direct a conclusion of either disability or non-disability."); *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983) ("where the claimant's impairment is nonexertional...the

19

[G]rids' [r]ules are not conclusive, and full individualized consideration must be given to all relevant facts of the case.").

However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the Grids. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). Rather, "the proper inquiry...is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Id.*; *see also Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984) ("If a nonexertional condition reduces an individual's residual functional capacity to perform sedentary work, it is inappropriate to apply the [G]rids because the range of jobs available to the impaired claimant is narrower than the [G]rids would indicate."). When a claimant has a combination of nonexertional and exertional limitations and it is clear that the nonexertional limitations will have little effect upon the exertional occupational base, the finding directed by the Grids is sufficient and VE testimony is unnecessary. S.S.R. 83-14, 1983 WL 31254, at *6; *see Smith*, 719 F.2d at 725 (holding reliance on the Grids is precluded only if the nonexertional condition affects claimant's RFC to perform work of which he is exertionally capable); *see also Rogers v. Barnhart*, 207 F. Supp. 2d 885, 896 (W.D.N.C. 2002) (noting the ALJ was not obligated to employ a VE because claimant's nonexertional impairments did not rise to a level which prevented a wide range of activity at the sedentary level).

As for Claimant's mental limitations, the ALJ found Claimant capable of performing jobs requiring no frequent changes in work procedures (R. 21) - a mental activity required by unskilled work. *See* S.S.R. 96-8p, 1996 WL 374184, at *6 (explaining unskilled work includes the ability to "deal with changes in a routine work setting"). As the ALJ explained, "[t]he jobs

20

required by the [Grids] do not require frequent changes in work procedures as they are unskilled." (R. 22). Moreover, Claimant's ability to perform unskilled work is supported by Dr. Schell's finding that Claimant was able to understand, retain and follow instructions and to perform simple, repetitive tasks and the finding by a mental health counselor that Claimant's cognitive functions were within normal limits and her attention and concentration were "focused." (R. 21, 167, 353). Accordingly, the ALJ properly concluded Claimant's non-exertional impairment would not prevent her from performing all the work activities she is otherwise exertionally capable of performing. As such, the finding directed by the Grids is proper and testimony from a VE was not required.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 21st day of November, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge